UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICKIE LEE HUNT,**

    **Plaintiff,**

                              **Civil Action 2:11-cv-00653**
**v.**                           **Judge Algenon L. Marbley**
                              **Magistrate Judge E.A. Preston Deavers**

**GARY MOHR,** *et al.*,

    **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate of the North Central Correctional Institution (NCCI) currently proceeding without the assistance of counsel, alleges that Defendants have been deliberately indifferent to his serious medical needs. This matter is before the Court for consideration of Plaintiff's Motion for Preliminary Injunction. (ECF No. 5.) Defendants responded to Plaintiff's Motion and Plaintiff replied. For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** the Motion for Preliminary Injunction. Additionally, Plaintiff's Renewed Motion for Appointment of Counsel (ECF No. 19) is **DENIED** and Defendants' Motion to Strike (ECF No. 20) is **GRANTED**.

### I.  BACKGROUND

Within his Complaint, Plaintiff alleges two separate instances of deliberate indifference to his serious medical needs. Plaintiff's first claim is that Defendants are improperly denying him cataract removal surgery. On April 8, 2011, an ophthalmologist examined Plaintiff at the Ohio State University ("OSU") Medical Center. The ophthalmologist recommended surgery to remove a cataract in Plaintiff's left eye. After Plaintiff elected to proceed, the surgery was

scheduled.

According to Plaintiff, Dr. Arthur Hale, the Chief Medical Officer at NCCI, later informed Plaintiff that the Ohio Department of Rehabilitation and Correction's ("ODRC") Collegial Review Committee ("Review Committee") had canceled Plaintiff's surgery. Dr. Hale further informed Plaintiff that he was scheduled to see the institutional optometrist for monitoring. Plaintiff contends that the NCCI is incapable of treating his cataract internally. He maintains that it was Dr. Brown, the institutional optometrist, who requested that a specialist evaluate Plaintiff. According to Plaintiff, Defendants are disregarding a substantial risk that he will lose sight in his left eye if the surgery is not performed.

In his second claim for deliberate indifference Plaintiff maintains that Defendants are improperly interfering with his ability to obtain medication for various esophagus issues. In particular, Plaintiff complains of an ODRC policy requiring him to obtain and pay for over-the-counter medication from the prison commissary. Within his Complaint, Plaintiff contends that Dr. Hale prescribed him Pepcid AC for his chronic esophagus conditions. According to Plaintiff, based on the above policy, he must purchase Pepcid AC from the commissary. Plaintiff also notes that he was previously prescribed Protonix, but that the institutional physician discontinued this prescription. Plaintiff does admit that the institution has provided him with a four month supply of Prilosec free of charge, but he has found this medication to be ineffective. Plaintiff contends that there is a substantial risk of further damage to his esophagus if he is not properly treated.

Plaintiff filed the present Motion for Preliminary Injunction in conjunction with his Complaint. Within the Motion, he seeks (1) an order reversing the Review Committee decision and immediately rescheduling his cataract removal surgery; (2) an order directing Defendants to

fill all medications that his physicians order including for Protonix and Pepcid AC; and (3) an order requiring Defendants to provide a medical consultation to perform a biopsy on Plaintiff's duodenum.  This is the same relief he seeks in his Complaint.

Defendants oppose Plaintiff's Motion for Preliminary Injunction, and have provided the Declaration of Defendant Polly Schmalz to support their contentions.  Defendant Scmalz is a Registered Nurse and Healthcare Administrator for NCCI.  Defendant Schmalz clarifies that the Review Committee reviews all recommendation for medical consultations concerning prisoners.  The Committee includes Dr. Andrew Eddy, ODRC's Chief Medical Officer, and John Gardner, the Chief Nurse Practitioner for ODRC.  Defendant Schmalz and Dr. Hale also participate in reviews concerning NCCI inmates.  During the review process, Dr. Hale explains his recommendations as to NCCI inmates and answers any questions of the Committee.  According to Defendant Schmalz, after reviewing Plaintiff's condition, the Review Committee decided to cancel Plaintiff's surgery.   The Committee found, based on Plaintiff's visual acuity, that his condition would have a limited impact on Plaintiff's life at NCCI.  The Committee adopted an alternative plan to have Dr. Brown monitor Plaintiff's cataract and recommend when another ophthalmologist consultation was necessary.

Within her Declaration, Defendant Scmaltz also discusses Plaintiff's esophagus issues.  Based on her review of Plaintiff's records she notes that he was prescribed Protonix in 2005.  Defendant Scmaltz emphasizes, however, that from 2000 to 2009 tests produced varying results.  In 2011, Dr. Hale prescribed Prilosec to treat Plaintiff's heartburn.  Defendant Schmalz states that the institution provided this medication free of charge.  According to Defendant Schmaltz, when a primary healthcare provider prescribes medication, and the inmates symptoms meet established criteria, ODRC will provide the medication free of costs.  Outside of this situation,

3

inmates are required to purchase over the counter medications from the prison's commissary. Defendant Schmaltz also states that when inmates are indigent, ODRC will provide the over the counter medication free of charge.

Finally, in his Reply to Defendants' Opposition, Plaintiff has provided selected excerpts from a medical textbook. Plaintiff asserts that these excerpts demonstrate the seriousness of his condition and the risk he faces if the Court does not grant immediate relief.

## II. STANDARD

Federal Rule of Civil Procedure 65(a) permits a party to seek injunctive relief when the party believes it will suffer immediate and irreparable injury, loss, or damage. Fed. R. Civ. P. 65(a). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002).

A district court considering a preliminary injunction must consider and balance the following four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits;
> (2) whether the movant will suffer irreparable harm if the injunction is not issued;
> (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Id*. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted); *see also Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given

4

controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). Additionally, in terms of irreparable injury, the plaintiff "must show irreparable harm that is 'both certain and immediate, rather than speculative or theoretical' to satisfy [his or her] burden . . . ." *NACCO Materials Handling Grp, Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 943 (6th Cir. 2007).

A movant's burden is even more difficult to satisfy where, as here, a prison inmate seeks an injunction to obtain affirmative relief beyond maintenance of the status quo. *See* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."); *Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

### III. ANALYSIS

Plaintiff maintains that he is entitled to a preliminary injunction because his medical indifference claims satisfy the four factors under Rule 65. The undersigned disagrees. Based on the circumstances of this case and the current information before the Court, Plaintiff has failed to meet his burden to establish the necessity of preliminary injunctive relief.

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The

5

United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011).

> The Sixth Circuit has also noted that in the context of deliberate indifference claims:
>
> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Here, based on the current record, Plaintiff has not demonstrated that he has a strong likelihood of success on the merits as to either of his claims. The undersigned will begin with Plaintiff's claim regarding the cancellation of his surgery. It is undisputed that in April 2011 an ophthalmologist from the OSU Medical Center recommended surgery to remove a cataract in Plaintiff's left eye. Although the surgery was scheduled, the ODRC Review Committee—a group of doctors and other medical professionals—cancelled the surgery after determining it was

unnecessary and approved an alternative plan in which Dr. Brown, the visiting optometrist, would monitor Plaintiff's condition. Within her response to Plaintiff's formal grievance, Defendant Mona Parks, a Registered Nurse, also opined that based on her review of Plaintiff's medical record, the surgery was an elective, rather than a necessary, procedure.[1]

Plaintiff disagrees with the Review Committee's assessment that the surgery is not necessary. Plaintiff contends that the opinions of Dr. Brown and the OSU Ophthalmologist support his own, but he provides no direct proof of this contention. At best, Plaintiff is able to point to a selected excerpt of a medical textbook that suggests a cataract should be removed as soon as vision declines to the 20/40 level. Because Plaintiff's vision is apparently below 20/40,[2] this information may provide some support for the idea that the surgery is necessary. This isolated excerpt, however, is insufficient to overcome the medical judgments of Plaintiff's prison medical care providers. Furthermore, even assuming the Committee's decision amounts to medical malpractice, such malpractice does not in and of itself establish a constitutional violation. Simply put, Plaintiff is being provided medical care in the form of continual monitoring of his condition. While Dr. Brown, an optometrist, may not be able to remove the cataract, Plaintiff has not demonstrated that Dr. Brown is incapable of monitoring his condition. Plaintiff may disagree with this course of action, but he has not demonstrated that this course of treatment is woefully inadequate. The undersigned notes that both this Court and other federal courts have reached similar conclusions under analogous circumstances. *See Hughes v.*

---

[1] Plaintiff attached the grievance responses of Defendant Parks to his Motion for Preliminary Injunction.

[2] According to Defendant Schmalz's Declaration, Plaintiff's vision was 20/50 at the time of the Review Committee' s decision. In his Reply, Plaintiff contends that Dr. Brown recently found his vision to be 20/70.

*Lavender*, No. 2:10–cv–674, 2011 WL 2457840, at *6 (S.D. Ohio June 16, 2011) (indicating, at the preliminary injunction stage, that the Court would not second guess jail physicians medical determination to cancel a surgery as unnecessary when the plaintiff was unable to present evidence that delay in surgery created "an unreasonable risk of serious harm"); *Buckley v. Corr. Med. Servs., Inc.*, 125 F. App'x 98, 99 (8th Cir. 2005) (holding that twenty-month delay in the scheduling of recommended surgery did not amount to a constitutional violation where the evidence demonstrated that the "surgery was elective and not a medical emergency").

Plaintiff has also failed to establish a likelihood of success as to Plaintiff's claim for interference with medication.  Even assuming that Plaintiff's "esophagus issues" are serious enough to satisfy the objective requirement of his claim, he is still not likely to succeed. Plaintiff's primary contention in this claim appears to be that Defendants are violating his rights by forcing him to pay for over the counter medication, specifically Pepcid AC, that his physician prescribed.  Nevertheless, although a prison is required to provide its inmates with adequate medical care, this care does not necessarily have to be free of charge.  *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3rd Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"); *Thompson v. Adams*, No. 3:11–cv–0337, 2011 WL 1898843 (W.D. La. Apr. 25, 2011) ("Courts have found [fee-for-service] polices constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs."); *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D. Ind. 1996) (holding that policy requiring purchase of over the counter drugs was not unconstitutional).  Here, Defendant Schmalz's Declaration indicates that the ODRC policy allows over the counter drugs to be provided free of cost when an inmate is indigent or when an inmate's symptoms meet certain criteria.  Furthermore, Plaintiff has done little to demonstrate

that he is unable to pay for the over the counter medication in question. Rather, the grievance materials Plaintiff attaches to his Motion for Preliminary Injunction reflect that he was able to afford $117.95 in commissary purchases over a 90 day period.[3]

For similar reasons, the undersigned also finds that Plaintiff has failed to show, beyond the merely speculative level, that he will suffer irreparable injury. In moving for injunctive relief, Plaintiff relies primarily on his own opinion to contend that he is in immediate danger of losing vision in his right eye and to establish that his esophagus is deteriorating. Furthermore, Plaintiff's citation to general textbook excerpts do little to demonstrate that Plaintiff himself is under a significant likelihood of danger. In this case, medical professionals have indicated that Plaintiff's surgery is not currently necessary and that he is being provided proper medication for his esophagus issues. Additionally, the evidence the parties have provided indicates that Plaintiff's condition is being routinely monitored. Under these circumstances, Plaintiff's own speculation as to the likely extent of his injuries is insufficient.

Finally, the Court finds that the other factors relevant to the preliminary injunction analysis do not shift the balance in Plaintiff's favor. Plaintiff maintains that no harm will come to others if an injunction is issued and, in fact, such an injunction would be in the public interest. Even assuming a lack of significant harm to others, with such a bare showing as to likelihood of success and irreparable harm, the undersigned is not convinced that second guessing the decisions of prison medical personnel would be in the public interest. *Hughes v. Lavender*, No.

---

[3] To the extent that Plaintiff's second claim is based on his physician's discontinuation of his Protonix prescription, the undersigned also finds it unlikely this claim will succeed. Plaintiff admits that the prison has provided him Prilosec for his esophagus issues. Although Plaintiff might find this medication less effective, this claim appears to amount to no more than a disagreement between Plaintiff and his physicians as to the appropriate medication.

2:10–cv–674, 2011 WL 1337155, at *4 (Apr. 6, 2011) (holding that removing the normal deference the Court gives to jail staff to make medical care decisions through a preliminary injunction, without a strong showing of threat of immediate injury, would not serve the public interest). Additionally, the undersigned stresses that in seeking an injunction Plaintiff is not attempting to preserve the status quo, but is instead seeking extensive relief prior to an adjudication on the merits.

## IV.  CONCLUSION

Accordingly, based on a balancing of the relevant factors, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's Motion for Preliminary Injunction. (ECF No. 5.)

At this time, the Court will also address other preliminary matters. Following Defendants Answer in this case, Plaintiff submitted a document that appears to be both a renewed Motion for Appointment of Counsel as well as a Reply to Defendant's Answer. Defendants have moved to strike this document. Plaintiff more recently moved by separate motion for appointment of counsel. (ECF No. 21.)

To the extent Plaintiff renews his Motion to Appoint Counsel, and moves again by independent motion, the Motions are **DENIED**. Plaintiff filed a previous Motion to Appoint Counsel, which was denied without prejudice for lack of exceptional circumstances. The Court once again does not find exceptional circumstances at this time, as it commonly addresses civil prisoner actions of a similar nature. Furthermore, Plaintiff has demonstrated himself to be a capable litigator thus far and should be able to utilize the tools available under the Federal Rules of Civil Procedure to conduct discovery and investigate the facts. If Plaintiff's action survives the dispositive motion phase, the Court will reconsider whether appointment of counsel is

appropriate.

Finally, Defendants' Motion to Strike is **GRANTED**. (ECF No. 20.) Plaintiff's September 15, 2011 filing is primarily a Reply to Defendant's Answer. Federal Rule of Civil Procedure 7(a) permits a reply to an answer only upon a court order. In this case the Court has not ordered a reply to Defendants' Answer. Accordingly, Plaintiff's Reply to Defendants' Answer (ECF No. 19) is **STRICKEN**.

## V.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

11

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: September 26, 2011  /s/ *Elizabeth A. Preston Deavers*
 Elizabeth A. Preston Deavers
 United States Magistrate Judge